```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LANDESBANK BADEN-WÜRTTEMBERG;
SPENCERVIEW ASSET MANAGEMENT
LIMITED; and CALEDONIAN TRUST
(CAYMAN) LIMITED (ON BEHALF AND FOR
THE BENEFIT OF THE LEVERAGED ACCRUAL
ASSET MANAGEMENT SUB-TRUST, THE
LEVERAGED ACCRUAL ASSET
MANAGEMENT SUB-TRUST II, AND THE
LEVERAGED ACCRUAL ASSET
MANAGEMENT SUBTRUST XI, EACH A SUBTRUST
OF THE PANACEA TRUST),

                  Plaintiffs,         OPINION

        -against-
                                      12 Civ. 5907(MGC)
CAPITAL ONE FINANCIAL CORPORATION;
CAPITAL ONE, NATIONAL ASSOCIATION
(SUCCESSOR-IN-INTEREST TO CHEVY
CHASE BANK, F.S.B.); CHEVY CHASE
FUNDING LLC; AND CREDIT SUISSE
SECURITIES (USA), LLC,

                  Defendants.
----------------------------------X
LANDESBANK BADEN-WÜRTTEMBERG,

                  Plaintiff,         12 Civ. 5909(MGC)

        - against -

CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE, NATIONAL ASSOCIATION
(SUCCESSOR-IN-INTEREST TO CHEVY CHASE
BANK, F.S.B.), CHEVY CHASE FUNDING LLC and
CREDIT SUISSE SECURITIES (USA) LLC,

                  Defendants.
----------------------------------X
LANDESBANK BADEN-WÜRTTEMBERG,
SPENCERVIEW ASSET MANAGEMENT
LIMITED and CALEDONIAN TRUST (CAYMAN)
LIMITED, ACTING IN ITS CAPACITY AS
```


```
TRUSTEE OF THE LEVERAGED ACCRUAL
ASSET MANAGEMENT SUB-TRUST, A SUBTRUST
OF THE PANACEA TRUST, AND THE
LEVERAGED ACCRUAL ASSET
MANAGEMENT II SUB-TRUST, A SUB-TRUST
OF THE PANACEA TRUST,

                Plaintiffs,          12 Civ. 5911(MGC)

        - against -

BARCLAYS BANK PLC, BARCLAYS CAPITAL
INC., CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE, NATIONAL ASSOCIATION
(SUCCESSOR-IN-INTEREST TO CHEVY CHASE
BANK, F.S.B.) and CHEVY CHASE FUNDING LLC,

                Defendants.
---------------------------------X
```

APPEARANCES:

    LABATON SUCHAROW LLP
    Attorneys for Plaintiffs
    140 Broadway
    New York, NY 10005

    By:   David J. Goldsmith, Esq.
         Joel H. Bernstein, Esq.
         Martis Alex, Esq.

    MURPHY & MCGONIGLE, PC
    Attorneys for Defendants Capital One Financial
    Corporation, Capital One, National Association, and
    Chevy Chase Funding LLC
    60 East 42nd Street, Suite 5230
    New York, NY 10165
    4870 Sadler Road, Suite 301
    Glen Allen, Virginia 23060

    By:   James K. Goldfarb, Esq.
         Soren E. Packer, Esq.
         James A. Murphy, Esq.
         Cameron S. Matheson, Esq.

```
SULLIVAN AND CROMWELL, LLP
Attorneys for Defendants Barclays Bank PLC and
Barclays Capital, Inc.
125 Broad Street
New York, NY 10004

By:  Brian Frawley, Esq.
     John Fritsch, Esq.
```

**Cedarbaum, J.**

These are three related actions, all removed from the Supreme Court of New York County. The defendants were all involved in the securitization of mortgages and their sale to the plaintiffs. Plaintiffs assert common law claims of misrepresentation in the offering materials. Defendants have removed the cases to this Court on the ground that the claims are governed by federal law, 12 U.S.C. § 632, a section added in 1933 to the Edge Act of 1919. Plaintiffs have moved to remand all three actions. For the reasons that follow, plaintiffs' motion is granted.

## FACTS

Plaintiffs allege that they invested in residential mortgage-based securities ("RMBSs") and that the offering materials contained misrepresentations and omissions regarding the legal validity of the assignments of the mortgage loans to trusts formed to hold the pooled loans. They also allege that the offering materials contained misrepresentations regarding the legal validity of the trusts and their legal entitlement to receive interest and principal payments on the loans.

Plaintiffs assert, and defendants do not contest, that all of the underlying mortgage loans finance homes in the United States. In each action, one of the defendants is Capital One, National Association ("Capital One"), successor-in-interest to

4

Chevy Chase Bank, F.S.B ("CCB").  Both Capital One, a national bank, and its predecessor CCB, which had been a federally chartered thrift, are corporations organized under the laws of the United States.

    The offering materials in all three actions, as well as both parties, refer to CCB as a "seller," but the term "seller" obfuscates CCB's role in the actual mechanics of the creation and sale of the RMBSs at issue.  The offering materials state that each transaction entailed a depositor who purchased mortgage loans from CCB, and in turn assigned the loans to a trustee.  In addition, the offering materials contain a description of a related Pooling and Servicing Agreement that provided that the depositor would assign the loans to the trustee and that the trustee would deliver certificates to the depositor in exchange for the loans.  CCB as servicer would also perform functions such as collecting payments from mortgagors.  The agreements' provisions on private placement make clear that the certificates were to be sold directly by the Initial Purchasers (the underwriters: Barclays Capital Inc. and Credit Suisse Securities (USA) LLC) to investors such as the plaintiffs.[1]

---

[1] The actual underwriter identified in the transactions varies among the various actions, but that is not relevant for purposes of this motion.

In other words, while CCB may be labeled as a "seller" in these documents, it does not have direct contact with any ultimate purchasers of the loans, such as plaintiffs.

## DISCUSSION

### I. Remand Standard

Where a removal is challenged, the removing party "bears the burden of showing that federal jurisdiction is proper." Montefiore Med. Ctr., v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011). In general, "'federal courts construe the removal statute narrowly, resolving any doubts against removability.'" Stamm v. Barclays Bank of N.Y., No. 96 Civ. 5158 (SAS), 1996 WL 614087, at *1 (S.D.N.Y. Oct. 24, 1996)(quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045–46 (2d Cir. 1991)). However, "'the federal court should be cautious about remand, lest it erroneously deprive defendant of the right to a federal forum.'" Contitrade Servs. Corp. v. Eddie Bauer Inc., 794 F. Supp. 514, 516 (S.D.N.Y. 1992) (quoting Manas y Piniero v. Chase Manhattan Bank, N.A., 443 F. Supp. 418, 419 (S.D.N.Y. 1978)).

### II. Section 632

The pertinent jurisdictional statute, 12 U.S.C. § 632, provides that:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising

6

>   out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in . . . foreign countries, shall be deemed to arise under the laws of the United States . . . and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.  Thus, a case arises under the laws of the United States if (1) the case is a civil suit at common law or in equity, (2) one of the parties is a corporation organized under the laws of the United States, and (3) the suit arises out of transactions involving international or foreign banking, including territorial banking, or other international or financial operations.  <u>Am. Int'l Grp., Inc. v. Bank of Am. Corp.</u> ("AIG"), 712 F.3d 775, 780 (2d Cir. 2013).  All three prongs of the test must be satisfied for jurisdiction to lie.

**III. Foreign Banking or Financial Operations**

Defendants do not, and cannot, argue that the sales of securities to foreign investors were transactions involving international or foreign banking, but instead contend that they were "international or foreign financial operations."

Courts have concluded that the sale of securities constitutes a foreign financial operation, but almost all the cases involved securities sold for the purpose of raising

7

capital. Stamm v. Barclays Bank of N.Y., 960 F. Supp. 724, 728 (S.D.N.Y. 1997) ("It is commonly understood that the sale of securities for the purposes of raising capital is a kind of financial operation."); Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 215 n. 13 (S.D.N.Y. 2005) (concluding that purchase of the stock of a Brazilian defendant and several of its affiliates constituted a financial operation); Travis v. Nat'l City Bank of N.Y., 23 F. Supp. 363, 365-66 (E.D.N.Y. 1938) (operations were those inherent in and arising out of trust indenture relating to sale of German corporation's bonds); see also Bin-Jiang Tao v. Citibank, N.A., 445 F. App'x 951, 954 (9th Cir. 2011) (unpublished), cert. denied, 132 S. Ct. 1561, 182 L. Ed. 2d 168 (2012) ("'[I]nternational or foreign financial operations,' . . . are defined to include operations by banks or corporations to raise capital, including through the sale of securities." (emphasis added)). But see Warter v. Boston Secs., S.A., No. 03-81026-Civ./Ryskamp, 2004 WL 691787, at *8 (S.D. Fla. Mar. 22, 2004) (finding that the "purpose of the securities transactions is not legally relevant to determining whether the transactions were financial in nature").

A sale of goods would not constitute a "financial operation." Sale of a security as a good, without a connection to raising capital, is not normally considered a "financial

8

operation." See Black's Law Dictionary (9th ed. 2009) (defining the verb finance as "[t]o raise or provide funds").

**IV.   Role of the Foreign Financial Operations**

Although there is serious doubt as to whether the sales in question are financial operations, there is no doubt that these operations, whatever their nature, do not have a sufficient connection to Capital One, the nationally-chartered defendant in this case.

Defendants argue that no nexus whatsoever is necessary between the federally-chartered corporation needed for jurisdiction and the foreign banking or financial operations. That argument is now foreclosed by the recent holding of the Second Circuit that a suit under the Edge Act "must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction of that federally chartered corporation." AIG, 712 F.3d at 784.

The need for a nexus is fatal to jurisdiction in this case.  The analysis of Sealink Funding Ltd. v. Bear Stearns & Co. Inc., a case that, like this one, involved state law claims of misrepresentations in materials relating to the sale of RMBSs to foreign plaintiffs, is persuasive.  No. 12 Civ. 1397 (LTS), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012).  The court concluded that since the role of the nationally-chartered defendant, Chase Bank, "appear[ed] to have been limited to creating U.S. trusts

9

that held U.S. mortgages — actions that had no international dimension," there was no nexus present.  Id. at *5.  The court added, "[t]he fact that other Defendants ultimately decided [to] sell the RMBS to foreign entities could well have been fortuitous as far as Chase Bank was concerned."  Id.

CCB did not directly sell any securities to the plaintiffs; rather, the underwriters did.  Moreover, the certificates were delivered by a trustee (not CCB) to a depositor (also not CCB), which assigned the loans to the trustee.  CCB's role simply entailed selling the underlying loans to the depositor.  The connection between the sale of the RMBSs and CCB is too tenuous to provide the nexus necessary to exercise federal jurisdiction.  The three actions must therefore be remanded.

## CONCLUSION

For the foregoing reasons plaintiffs' motions to remand are granted.  The Clerk is directed to return this case with all of its papers to the Supreme Court of New York County.  Case closed.


SO ORDERED

Dated:    New York, New York
          July 17, 2013

                                    S/_____
                                      MIRIAM GOLDMAN CEDARBAUM
                                      United States District Judge